B AND D ASSOCIATES, INC. *v.* RICHARD J. RUSSELL
(AC 22112)

Foti, Mihalakos and Bishop, Js.

Argued June 6—officially released October 15, 2002

*Stuart G. Blackburn*, for the appellant (plaintiff).

*Joseph A. LaBella*, for the appellee (defendant).

*Opinion*

BISHOP, J. B and D Associates, Inc., the plaintiff in this negligence action, appeals from the summary judgment rendered by the trial court in favor of the defendant, Richard J. Russell. On appeal, the plaintiff claims that genuine issues of material fact exist and, therefore, that the court acted improperly in granting the defendant's motion for summary judgment. In response, the defendant, inter alia, advances an alternate ground for affirming the judgment; he contends that an intervening force, namely, a criminal act of a third party, superseded to relieve him of liability for his negligence. We affirm in part and reverse in part.

The following facts are undisputed. The defendant, a landlord, was the owner of a building at 7 Capital Drive, Wallingford. As of February, 1997, that building was divided into two business locations, one of which was leased by the plaintiff and the other by a business named Quality Auto Care. On February 1, 1997, a fire occurred in the area of the building leased by Quality

Auto Care. Although that fire caused considerable damage to the building, it did not cause significant damage to the area of the building leased by the plaintiff. Between February 1 and February 10, 1997, employees of Quality Auto Care removed salvageable items from the building, and the defendant undertook some measures to secure the damaged area of the building.

On February 19, 1997, a second fire occurred. That fire, which is known to have resulted from arson, began in the area of the building leased by Quality Auto Care and eventually consumed the entire building, causing substantial damage to personal property that was owned by the plaintiff. The plaintiff's insurer, Hartford Fire Insurance Company, indemnified the plaintiff for losses totaling $1,699,012.42, including $350,000 for lost business income. The Hartford Fire Insurance Company, asserting the rights of its insured, later commenced a subrogation action against the defendant. In that action, which sounds in negligence and is the subject of the present appeal, the defendant is alleged to have proximately caused the plaintiff's losses by failing in its duty (1) to secure the building, especially after the first fire, (2) to repair the building adequately following the first fire and (3) to install "fire stopping" and "draft stopping" devices as required by law. The plaintiff alleged that as a result of the defendant's omissions, it "suffered damage to its equipment and the loss of its business in an amount in excess of $1,600,000."

In response, the defendant filed a motion for summary judgment in which it argued that the lease contains a risk of loss provision, releasing the defendant from all liability to the plaintiff, including liability flowing from the defendant's own negligence. Section 24 of the lease consists of the risk of loss provision and states: "Risk of Loss. It is expressly understood and agreed between the parties hereto that all goods, wares, merchandise, equipment, furnishings, tools, machinery and

every other property of any other nature whatsoever, stored, used, maintained or kept on the herein leased premises, will be stored, used, maintained and kept on the herein leased premises by said TENANT, TENANT'S agents, servants, customers or by any other person or persons whatsoever solely at the risk of TENANT and/ or any of the aforementioned persons or classes of persons; and there shall be no liability on the part of the LANDLORD to said TENANT and/or to *any* of said persons or classes of persons, or to anyone else for *any* damage or loss to *any* of the foregoing from *any* cause or for *any* reason whatsoever." (Emphasis added.)

On the basis of § 24 of the lease, the court rendered summary judgment in favor of the defendant. In so doing, it concluded that § 24 was clear and unambiguous, and that the use of the word "any" extinguished the possibility that a genuine issue of material fact existed as to whether the plaintiff had assumed the risk of loss. The court further concluded that in § 24, the plaintiff released the defendant from liability flowing from the defendant's negligence. This appeal followed. Additional facts and procedural history will be set forth as necessary.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles

of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 24, 727 A.2d 204 (1999). Mindful of that standard of review, we consider the plaintiff's claims and the alternate ground for affirmance advanced by the defendant.

## I

The plaintiff advances several arguments in support of its claim that the court acted improperly in rendering summary judgment. It argues that: (1) § 24 does not release the defendant from liability for his negligence or, alternatively, that § 24 does not release the defendant from liability for negligently failing to secure the building; (2) the court acted improperly in concluding that there was no genuine issue of material fact as to the intent of the parties at the time they entered into the lease, particularly § 24; (3) § 24 does not release the defendant from liability for negligently causing the plaintiff to lose business income; and (4) the first fire altered the scope of § 24.

The following additional legal principles are relevant to our consideration of the plaintiff's arguments. "In construing a written lease, which constitutes a written contract, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." (Internal quotation marks omitted.) *Peter-Michael, Inc.*

v. *Sea Shell Associates*, 244 Conn. 269, 275, 709 A.2d 558 (1998). "A determination of contractual intent ordinarily presents a question of fact for the ultimate fact finder, although where the language is clear and unambiguous, it becomes a question of law for the court." Id., 276.

"In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . Furthermore, a presumption that the language used is definitive arises when, as in the present case, the contract at issue is between sophisticated parties and is commercial in nature. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670–71, 791 A.2d 546 (2002).

A

In the present case, the parties disagree over whether § 24 of the lease ever releases the defendant from liability to the plaintiff for the defendant's negligence. We now address that issue.

"The law does not favor contract provisions which relieve a person from his own negligence. . . . Such provisions, however, have been upheld under proper circumstances." (Citations omitted.) *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 413, 446 A.2d 799 (1982); see also *Gross* v. *Sweet*, 49 N.Y.2d 102, 106, 400 N.E.2d 306, 424 N.Y.S.2d 365 (1979) ("the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence"). "[T]he law's reluctance to enforce exculpatory provisions of this nature has resulted in the development of an exacting standard by which courts measure their validity. So, it has been repeatedly emphasized that unless the intention of the parties is expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts . . . . Put another way, it must appear plainly and precisely that the limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility . . . .

"Not only does this stringent standard require that the drafter of such an agreement make its terms unambiguous, but it mandates that the terms be understandable as well. Thus, a provision that would exempt its drafter from any liability occasioned by his fault should not compel resort to a magnifying glass and lexicon. . . . Of course, this does not imply that only simple or monosyllabic language can be used in such clauses. Rather, what the law demands is that such provisions be clear and coherent . . . .

"By and large, if such is the intention of the parties, the fairest course is to provide explicitly that claims based on negligence are included . . . . That does not mean that the word 'negligence' must be employed for courts to give effect to an exculpatory agreement; however, words conveying a similar import must appear

. . . ." (Citations omitted; internal quotation marks omitted.) *Gross* v. *Sweet*, supra, 49 N.Y.2d 107–108.

When applied to contracts to which the parties are sophisticated business entities, "the law, reflecting the economic realities, will recognize an agreement to relieve one party from the consequences of his negligence on the strength of a broadly worded clause framed in less precise language than would normally be required, though even then it must evince the unmistakable intent of the parties . . . ." (Citation omitted; internal quotation marks omitted.) Id., 108.

In the present case, § 24 is clear and unambiguous and, consequently, there is no need to look beyond the text of that section to discern each party's intent at the time the lease was executed. The language in § 24 that "there shall be no liability on the part of LANDLORD to said TENANT . . . for any damage or loss to any of the foregoing from any cause or for any reason whatsoever" unmistakably evidences an intent to release the defendant from liability to the plaintiff, no matter how incurred, for the types of losses listed in § 24. Accordingly, we conclude that § 24 released the defendant from liability to the plaintiff for negligently causing those types of losses.[1] Thus, the court's decision on that issue is correct. For the reasons that follow, we conclude, however, that the court acted improperly in concluding that § 24 released the defendant from liability to the plaintiff for every loss alleged in the plaintiff's complaint.

As stated previously, the court found that § 24 had released the defendant from liability for negligently

---

[1] We note that (1) the plaintiff was a business entity and the defendant was a business person at the time the lease was executed, and (2) there is no evidence that the defendant had significantly more bargaining power than the plaintiff. Additionally, the evidence establishes that the plaintiff, not the defendant, paid to insure itself from losses caused by fire, further evidencing the parties' intent to relieve the defendant from liability.

causing the plaintiff to lose business profits. That section, which previously is set forth, provides, among other things, that the defendant is responsible for losses of "*goods, wares, merchandise, equipment, furnishings, tools, machinery and every other property of any other nature whatsoever, stored, used, maintained or kept on the herein leased premises . . . .*" The plaintiff, on appeal, contends that lost business profits are not included in § 24 and, therefore, that the court acted improperly in granting summary judgment on that issue. In response, the defendant argues that § 24 includes intangibles such as lost profits. We agree with the plaintiff.

Although we acknowledge that in § 24, the phrase "every other property of any other nature whatsoever," when considered in isolation, could include damage in the form of lost business profits, § 24 continues on and qualifies that phrase by requiring that such property be "*stored, used, maintained or kept on the herein leased premises . . . .*" Economic loss, including lost business profits, is intangible, speculative in nature and certainly cannot be stored, used, maintained or kept on any premises. Because of the restrictive language employed in § 24, we conclude that it does not encompass intangible losses such as lost business profits.

### B

Finally, the plaintiff argues that as a result of the fire on February 1, 1997, additional contractual obligations were imposed on the defendant, i.e., obligations beyond those contained in the lease. Specifically, the plaintiff contends that the defendant had an obligation to better secure the areas of the property under his control to maintain them in a reasonably safe and secure condition. We disagree.

"[A] lease is a contract" between the landlord and his tenant. (Internal quotation marks omitted.) *Murphy,*

*Inc.* v. *Remodeling, Etc., Inc.,* 62 Conn. App. 517, 522, 772 A.2d 154, cert. denied, 256 Conn. 916, 773 A.2d 945 (2001). "[I]n interpreting a contract courts cannot add new or different terms . . . ." (Citation omitted; internal quotation marks omitted.) *Bank of Boston* v. *Scott Real Estate, Inc.,* 40 Conn. App. 616, 622, 673 A.2d 558, cert. denied, 237 Conn. 912, 675 A.2d 884 (1996). Also, "[w]hen only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." (Internal quotation marks omitted.) *Rund* v. *Melillo,* 63 Conn. App. 216, 220, 772 A.2d 774 (2001).

There is no evidence that the defendant and the plaintiff renegotiated the lease after the February 1, 1997, fire. Moreover, none of the terms of the lease indicates that certain conditions, if satisfied, would place additional obligations on the defendant. The lease embodies the agreement between the parties, and it is not within the discretion of this court to alter a contract entered into in an arms length transaction. Therefore, we conclude that the fire imposed no new, additional obligations on the defendant.

## II

The defendant claims an alternate ground for affirming the summary judgment in its entirety. He contends that an intervening force, namely, a criminal act of a third party, superseded to relieve him of liability for his negligence. Specifically, the defendant claims that the person who set the second fire committed an intervening criminal act sufficient to relieve the defendant of liability. An examination of the law behind intervening and superceding causes is required for that analysis.

"The terms intervening cause and superseding cause have been used interchangeably. . . . The Restatement of Torts makes clear that the doctrine is

properly referred to as superseding cause, and that it embodies within it the concept of an intervening force." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 178, 700 A.2d 38 (1997), citing 2 Restatement (Second), Torts §§ 440 through 453 (1965). "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, supra, 179.

"Regarding intervening cause, [our Supreme Court has] adopted the standard set forth in § 442B of [2 Restatement (Second), supra], that [w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct." (Internal quotation marks omitted.) *Ludington* v. *Sayers*, 64 Conn. App. 768, 774, 778 A.2d 262 (2001). "[T]o be within the scope of the risk, the harm actually suffered must be of the same general type as that which makes the defendant's conduct negligent in the first instance. . . . Moreover, [i]f the . . . [defendant's] conduct is a substantial factor in bringing about harm to another, the fact that the . . . [defendant] neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent [him] from being liable." (Internal quotation marks omitted.) Id., 774–75.

As applied to the present case, the defendant is released from liability providing: (1) the criminal act of arson is not within the scope of risk created by the defendant's negligence; (2) the damage to the plaintiff

is not of the same general type as that which makes the defendant's conduct negligent; and (3) the defendant neither foresaw nor could have foreseen the extent of the harm.

The plaintiff alleges, and an affidavit of his expert witness suggests, that if the defendant had installed appropriate fire walls, the damage to the plaintiff's property would have been reduced substantially. The plaintiff also alleges that the defendant was under a duty to install such preventive devices and that failure to do so constituted negligence. Further, the defendant had firsthand knowledge of the damage that a fire could do to the building by virtue of witnessing the aftermath of the first fire. Moreover, the plaintiff alleges that the defendant did not make any substantial effort to secure the building after the first fire, despite the plaintiff's complaints that suspicious people had been seen hanging around the building. If those allegations prove to be accurate and the defendant was negligent, it may be found that the arson was within the scope of risk created by such negligence. Also, the damage to the plaintiff's property may be found to be of the same type as that which made his conduct negligent; in other words, failure to provide adequate security and appropriate fire prevention devices led to damage caused by fire.

"An issue of proximate cause is ordinarily a question of fact for the trier." (Internal quotation marks omitted.) Id., 773. "It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion . . . ." (Internal quotation marks omitted.) Id., 773–74.

In the present case, we conclude that the evidence, when viewed in the light most favorable to the plaintiff, does not establish as a matter of law that the intervening criminal act of a third party (the arsonist) released the defendant from liability to the plaintiff.

The judgment is reversed only as it relates to the plaintiff's allegation that the defendant negligently caused the plaintiff to lose business profits and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.