# FRANCESCA HYSON *v.* WHITE WATER MOUNTAIN RESORTS OF CONNECTICUT, INC.
## (SC 16773)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.[1]

Argued March 13—officially released September 2, 2003

---

[1] This case was first argued March 13, 2003, before a panel of this court consisting of Justices Borden, Norcott, Katz, Palmer and Vertefeuille. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Chief Justice Sullivan and Justice Zarella were added to the panel, and they have read the record and briefs, and have listened to the tape recording of the original oral argument.

*Jeffrey A. Rozen*, for the appellant (plaintiff).

*Christopher M. Vossler*, with whom, on the brief, were *Beatrice S. Jordan* and *Alexandria L. Bufford*, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The dispositive issue in this appeal is whether a document entitled "RELEASE FROM LIA-BILITY" and signed by the plaintiff, Francesca Hyson, precludes her from recovering damages in this negligence action against the defendant, White Water Mountain Resorts of Connecticut, Inc., for personal injuries sustained by the plaintiff while she was snowtubing at a facility operated by the defendant. On the basis of the release, the defendant filed a motion for summary judgment. The trial court granted the motion and rendered judgment for the defendant, and the plaintiff appealed.[2] We conclude that the release signed by the plaintiff does not release the defendant from liability, or indemnify the defendant, for injuries resulting from its negligence. Accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of this appeal. At all times relevant to this appeal, the defendant operated a facility in Middlefield, known as Powder Ridge, at which the public, in exchange for a fee, is invited to ski, snowboard

---

[2] The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

and snowtube. On January 30, 1999, the plaintiff, in her capacity as patron and invitee of the defendant at Powder Ridge, was snowtubing on a hill designated and maintained by the defendant for that purpose on an inner tube provided by the defendant.

Prior to using the defendant's facilities, the plaintiff signed the putative release at issue.[3] In her amended complaint, the plaintiff alleged that she had suffered injuries to her hand and wrist when her inner tube failed to stop at the bottom of the hill but, instead, continued over a "cliff."[4] The plaintiff further alleged that her injuries had resulted from the defendant's negligence. Specifically, she claimed that the defendant: (1) permitted the slope at the bottom of the hill to be excessively

---

[3] That document states:

"SNOWTUBING
"RELEASE FROM LIABILITY
"PLEASE READ CAREFULLY BEFORE SIGNING

"1. I accept use of a snowtube and accept full responsibility for the care of the snowtube while in my possession.

"2. I understand that there are inherent and other risks involved in SNOW-TUBING, including the use of lifts and snowtube, and it is a dangerous activity/sport. These risks include, but are not limited to, variations in snow, steepness and terrain, ice and icy conditions, moguls, rocks, trees, and other forms of forest growth or debris (above or below the surface), bare spots, lift terminals, cables, utility lines, snowmaking equipment and component parts, and other forms [of] natural or man made obstacles on and/or off chutes, as well as collisions with equipment, obstacles or other snowtubes. Snow chute conditions vary constantly because of weather changes and snowtubing use. Be aware that snowmaking and snow grooming may be in progress at any time. These are some of the risks of SNOWTUBING. All of the inherent risks of SNOWTUBING present the risk of serious and/or fatal injury.

"3. I agree to hold harmless and indemnify Powder Ridge, White Water Mountain Resorts of Connecticut, Inc. and/or any employee of the afore mentioned for loss or damage, including any loss or injuries that result from damages related to the use of a snowtube or lift.

"I, the undersigned, have read and understand the above release of liability."

[4] The defendant disputes the characterization of the topography at the bottom of the hill as a "cliff," referring to it instead as a "snow mound" or a "berm."

slippery; (2) failed to maintain an adequate barrier at the bottom of the hill designed to stop patrons; (3) failed to stop inner tubes as they reached the bottom of the hill; and (4) failed to post any signs warning patrons of dangerous conditions at the bottom of the hill, namely, that the bottom of the hill ended in a cliff, below which the ground was rocky and hard.

The defendant denied having negligently caused injury to the plaintiff and asserted as special defenses that the plaintiff's claims were barred because she had signed the release, that she had assumed the risk of injury contractually, that any injuries to the plaintiff had been caused by her own negligence, and that her claims were barred by General Statutes § 29-212.[5] In addition, the defendant filed a counterclaim alleging that, by signing the release, the plaintiff had incurred a contractual obligation to hold the defendant harmless and to indemnify it for any damages resulting from her use of its facilities, including personal injuries to herself. Accordingly, the defendant claims that, in the event of a judgment in favor of the plaintiff, she would be obligated to indemnify it to the extent of any such judgment.

[5] General Statutes § 29-212 provides: "Each skier shall assume the risk of and legal responsibility for any injury to his person or property arising out of the hazards inherent in the sport of skiing, unless the injury was proximately caused by the negligent operation of the ski area by the ski area operator, his agents or employees. Such hazards include, but are not limited to: (1) Variations in the terrain of the trail or slope which is marked in accordance with subdivision (3) of section 29-211 or variations in surface or subsurface snow or ice conditions, except that no skier assumes the risk of variations which are caused by the operator unless such variations are caused by snow making, snow grooming or rescue operations; (2) bare spots which do not require the closing of the trail or slope; (3) conspicuously marked lift towers; (4) trees or other objects not within the confines of the trail or slope; (5) boarding a passenger tramway without prior knowledge of proper loading and unloading procedures or without reading instructions concerning loading and unloading posted at the base of such passenger tramway or without asking for such instructions; and (6) collisions with any other person by any skier while skiing."

On the basis of the plaintiff's release, the defendant filed its motion for summary judgment, which the trial court granted. We now reverse the judgment of the trial court.

The plaintiff asserts that the release does not prevent her recovery for two reasons. First, she maintains that the release does not relieve the defendant of liability for its negligence because negligence is not expressly mentioned in the document. Second, she contends that the enforcement of an agreement that purports to release a party from liability for its prospective negligence is contrary to public policy, without regard to the language used. Because we agree with the plaintiff that the language used in the release at issue does not release the defendant from liability for claims arising from its negligence, we do not reach the issue of whether a well drafted agreement purporting to have such an effect would be enforceable.

We note first that the release signed by the plaintiff does not specifically refer to possible negligence by the defendant. Instead, it refers to "inherent and other risks involved in [snowtubing]," provides examples of some such risks, none of which refers to possible negligence, and states that "[a]ll of the inherent risks of [snowtubing] present the risk of serious and/or fatal injury." Following this language, the release states that the plaintiff agrees "to hold harmless and indemnify [the defendant] for loss or damage, including any loss or injuries that result from damages related to the use of a snowtube or lift." See footnote 3 of this opinion.

Neither this court nor the Appellate Court[6] has had occasion to determine whether an agreement pur-

---

[6] Recently, the Appellate Court held that a lease for commercial property that provided that there "shall be no liability" on behalf of the defendant landlord to the tenant, but did not refer to negligence, "unmistakably evidences an intent to release the defendant from liability to the plaintiff, no matter how incurred, for the types of losses listed in [that section of the lease]," including losses resulting from the landlord's negligence. *B & D*

porting to release or indemnify the proprietor of a recreational facility or service prospectively may be applied to damages arising from that party's negligence in the absence of express language so indicating.[7] There is, however, widespread support in other jurisdictions for

*Associates, Inc.* v. *Russell*, 73 Conn. App. 66, 73, 807 A.2d 1001 (2002). The court stated, however, that "the plaintiff was a business entity and the defendant was a business person at the time the lease was executed, and . . . there is no evidence that the defendant had significantly more bargaining power than the plaintiff. Additionally, the evidence establishes that the plaintiff, not the defendant, paid to insure itself from losses caused by fire, further evidencing the parties' intent to relieve the defendant from liability." Id., 73 n.1. We do not today decide whether such language suffices to release landlords from liability for their negligence in the context of commercial leases.

[7] This issue has been addressed on numerous occasions by the Superior Court. "The majority of [Superior Court cases] that have recently addressed this issue . . . take the position that specific language, i.e., the word 'negligence,' must be used to waive effectively claims for negligence against facility operators." *Foley* v. *Southington-Cheshire Community YMCAs, Inc.*, Superior Court, judicial district of New Britain, Docket No. CV00 502023 (March 28, 2002) (31 Conn. L. Rptr. 673, 673–74), citing, inter alia, *Bashura* v. *Strategy Plus, Inc.*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV95 0050871 (November 20, 1997) (21 Conn. L. Rptr. 59, 61); *Slauson* v. *White Water Mountain Resorts of Connecticut, Inc.*, Superior Court, judicial district of New Haven, Docket No. CV99 0432460 (May 30, 2001) (29 Conn. L. Rptr. 605, 606).

Indeed, on several recent occasions, the Superior Court has held that the defendant in the present case was not released from liability for its negligence by a plaintiff's signing of a release that did not expressly so provide. See *Longley* v. *White Water Mountain Resorts of Connecticut, Inc.*, Superior Court, judicial district of New Haven, Docket No. CV02 0460229 S (December 10, 2002) (33 Conn. L. Rptr. 505, 507); *Potts* v. *White Water Mountain Resorts of Connecticut, Inc.*, Superior Court, judicial district of New London, Docket No. CV99 0550961 (August 24, 2001) (30 Conn. L. Rptr. 301, 302) (" 'law disfavors exculpatory contracts because they tend to allow conduct below the acceptable level of care' "); *Slauson* v. *White Water Mountain Resorts of Connecticut, Inc.*, supra, 29 Conn. L. Rptr. 606 ("such a rule [requiring express reference to negligence] does not impose a great burden on the operator"); *Malin* v. *White Water Mountain Resorts of Connecticut, Inc.*, Superior Court, judicial district of New Haven, Docket No. 432774 (March 16, 2001) (29 Conn. L. Rptr. 374, 375) ("law does not favor contract provisions which relieve a person for his own negligence . . . antipathy has deep roots in Connecticut jurisprudence" [citation omitted; internal quotation marks omitted]).

a rule requiring that any agreement intended to exculpate a party for its own negligence state so expressly.[8] See 2 Restatement (Second), Contracts § 195, comment (b) (1981) ("[l]anguage inserted by a party in an agreement for the purpose of exempting him from liability for negligent conduct is scrutinized with particular care and a court may require specific and conspicuous reference to negligence under the general principle that language is interpreted against the draftsman"); 1 E. Farnsworth, Contracts (2d Ed. 1998) § 4.29a, p. 587 ("[c]ourts have often found exculpatory clauses couched in general language insufficient to bar claims for liability for negligence"); but see 1 E. Farnsworth, supra, § 4.29a, pp. 587–88 ("not all courts have been so demanding").[9]

Indemnification agreements give rise to the same issues and are interpreted in a similar fashion.[10] Thus, although "[i]n many jurisdictions a written contract of indemnity will not be construed to indemnify against

[8] See, e.g., *Wenzel v. Boyles Galvanizing Co.*, 920 F.2d 778, 781 (11th Cir. 1991) (under Florida law, "clause simply disclaiming liability in general terms is insufficient"); *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 257, 686 A.2d 298 (1996) ("clause must not simply be unambiguous but also understandable"); *Alack v. Vic Tanny International of Missouri, Inc.*, 923 S.W.2d 330, 337 (Mo. 1996) (requiring "clear, unambiguous, unmistakable, and conspicuous language"); *Gross v. Sweet*, 49 N.Y.2d 102, 110, 400 N.E.2d 306, 424 N.Y.S.2d 365 (1979) (waiver of "any and all claims . . . for any personal injuries" not sufficient to cover negligence); *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex. 1993) ("fair notice requirements of conspicuousness and the express negligence doctrine" apply both to indemnity agreements and to exculpatory provisions).

[9] See, e.g., *Krazek v. Mountain River Tours, Inc.*, 884 F.2d 163, 166 (4th Cir. 1989) (declining to require use of specific "magic words" such as negligence); *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 785 (Colo. 1989) ("use of the specific [term] 'negligence' . . . not invariably required"); *Schutkowski v. Carey*, 725 P.2d 1057, 1058, 1062 (Wyo. 1986) (provision to "release and discharge . . . all persons . . . directly or indirectly liable, from any and all" claims sufficient to cover negligence).

[10] In the present case, because the party whose injuries gave rise to the claim for damages at issue is the party who signed the release, the indemnification provision operates as an exculpatory clause.

the indemnitee's own negligence unless there is a clear expression of that intention, and then the contract is strictly construed . . . [a] specific reference to negligence of the indemnitee is not always required." 41 Am. Jur. 2d, Indemnity § 20 (1995). In keeping with the well established principle, however, that "[t]he law does not favor contract provisions which relieve a person from his own negligence"; *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 413, 446 A.2d 799 (1982); we conclude that the better rule is that a party cannot be released from liability for injuries resulting from its future negligence in the absence of language that expressly so provides.[11] The release signed in the present case illustrates the need for such a rule. A person of ordinary intelligence reasonably could believe that, by signing this release, he or she was releasing the defendant only from liability for damages caused by dangers inherent in the activity of snowtubing. A requirement of express language releasing the defendant from liability for its negligence prevents individuals from inadvertently relinquishing valuable legal rights. Furthermore, the requirement that parties seeking to be released from liability for their negligence expressly so indicate does not impose on them any significant cost.[12]

---

[11] As stated previously, we do not decide today whether a contract having such express language would be enforceable to release a party from liability for its negligence. Contrary to the dissent's assertion, we do not believe that, by declining to decide cases that are not before us, we are engaging in "ambiguous rule making."

[12] *Foley* v. *Southington-Cheshire Community YMCAs, Inc.*, Superior Court, judicial district of New Britain, Docket No. CV00 502023 (March 28, 2002) (31 Conn. L. Rptr. 673, 673–74); *Slauson* v. *White Water Mountain Resort of Connecticut, Inc.*, Superior Court, judicial district of New Haven, Docket No. CV99 0432460 (May 30, 2001) (29 Conn. L. Rptr. 605, 606). The dissent maintains that our ruling that a party may not obtain a release from liability for its negligence, at least in the absence of an express provision to that effect, will have "grievous consequences in our state, particularly within the context of recreational activities . . . ." The dissent does not articulate what those grievous consequences might be, other than to assert that this ruling "makes it more difficult for those who sponsor certain

Because the release signed by the plaintiff in the present case did not expressly provide that, by signing it, she released the defendant from liability for damages resulting from its negligence, the trial court improperly granted the defendant's motion for summary judgment.

The judgment is reversed and the case is remanded to the trial court for further proceedings according to law.

In this opinion PALMER, VERTEFEUILLE and ZARELLA, Js., concurred.

KATZ, J., concurring. I concur in the result.

NORCOTT, J., with whom BORDEN, J., joins, dissenting. In the present case, the majority concludes that "a party cannot be released from liability for damages resulting from its future negligence in the absence of language that expressly so provides." Put differently, the majority concludes that, unless an exculpatory clause explicitly states that the signatory is releasing all claims sounding in negligence, the release will not be enforceable.[1] Because I believe that the release

recreational activities to allocate the risk involved in those activities." Today's decision, however, applies not to the allocation of *all* risks involved in recreational activities, but only to attempts by providers of recreational activities to allocate to patrons the risk that a patron will be harmed by the provider's negligence. Furthermore, because our decision today does not impose unclear or burdensome requirements on those who want to draft releases, even this allocation is made more difficult only insofar as patrons who are otherwise willing to sign releases such as that in the present case become unwilling to do so when informed that those releases are intended to release the releasees from liability for the releasees' negligence.

[1] I find curious the majority opinion's approach to this issue. First, the majority seemingly announces a new rule, namely, requiring exculpatory clauses to contain specifically the word "negligence." Next, however, the majority goes on to state in footnote 11 of its opinion, immediately following the announcement of the new rule, that they do not decide whether this rule will have any effect in future cases. I believe that the majority, therefore, suffers from a lack of confidence in the rule it seemingly articulates, which is thereafter belied in footnote 11. I question the effectiveness of this type of rule making and, accordingly, the announcement of the rule in the first instance. Specifically, ambiguous rule making such as this will confuse

signed by the plaintiff, Francesca Hyson, fully informed her that she was releasing the defendant, White Water Mountain Resorts of Connecticut, Inc., of all liability arising out of her participation in the snowtubing operated by the defendant, and because I believe that the majority opinion will have grievous consequences in our state, particularly within the context of recreational activities, I disagree. Accordingly, I respectfully dissent.

To begin, although the issue of whether a release of liability must specifically state that the signatory is releasing any claim sounding in negligence has not been addressed by this court, the Appellate Court has had the opportunity to analyze the issue. In *B & D Associates, Inc.* v. *Russell*, 73 Conn. App. 66, 67, 807 A.2d 1001 (2002),[2] the plaintiff commercial tenant brought an action sounding in negligence against the defendant landlord for losses the plaintiff had incurred as a result of a fire. Thereafter, the defendant moved for summary judgment, claiming that a provision in the parties' lease released him from all liability. Id., 68. The lease in that case provided that the tenant bore the risk of loss and that the tenant would not hold the landlord liable for any damage or loss that occurred for any reason. Id., 68–69. After the trial court granted the defendant's

the reader, particularly, members of the bar, who must attempt to draft exculpatory agreements for their clients that will be enforced by the courts of this state.

[2] The majority distinguishes this case on grounds that the plaintiff and the defendant in *B & D Associates, Inc.* v. *Russell*, supra, 73 Conn. App. 66, were parties to a commercial lease and the fact that there was no evidence that the defendant "had significantly more bargaining power than the plaintiff." I do not find this distinction persuasive. First, there is no indication in the present case that the defendant had significantly more bargaining power than the plaintiff. See footnote 4 of this dissent. Second, the plaintiff testified at her deposition that she both read and understood the release signed in the present case. Thus, I would apply the reasoning employed by the Appellate Court in *B & D Associates, Inc.*, notwithstanding the fact that the case involved parties to a commercial lease rather than a participant in a recreational activity.

motion for summary judgment on the basis of the release, the plaintiff appealed to the Appellate Court, claiming that the lease provision did not release the defendant from his own negligence. Id., 70.

Thereafter, the Appellate Court determined that the lease provision released the defendant from liability for any negligence. In so concluding, the Appellate Court explained that "[t]he law does not favor contract provisions which relieve a person from his own negligence. . . . Such provisions, however, have been upheld under proper circumstances. . . . [T]he law's reluctance to enforce exculpatory provisions of this nature has resulted in the development of an exacting standard by which courts measure their validity. So, it has been repeatedly emphasized that unless the intention of the parties is expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts . . . . Put another way, it must appear plainly and precisely that the limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility . . . ." (Citations omitted; internal quotation marks omitted.) Id., 72; *Gross* v. *Sweet*, 49 N.Y.2d 102, 107, 400 N.E.2d 306, 424 N.Y.S.2d 365 (1979).

Moreover, the Appellate Court noted, "[n]ot only does this stringent standard require that the drafter of such an agreement make its terms unambiguous, but it mandates that the terms be understandable as well. Thus, a provision that would exempt its drafter from any liability occasioned by his fault should not compel resort to a magnifying glass and lexicon. . . . Of course, this does not imply that only simple or monosyllabic language can be used in such clauses. Rather, what the law demands is that such provisions be clear and coherent . . . . By and large, if such is the intention of the parties, the fairest course is to provide explicitly that claims based on negligence are included . . . .

*That does not mean that the word negligence must be employed for courts to give effect to an exculpatory agreement;* however, words conveying a similar import must appear . . . ." (Emphasis added; internal quotation marks omitted.) *B & D Associates, Inc.* v. *Russell,* supra, 73 Conn. App. 72–73. Thus, in *B & D Associates, Inc.,* because the lease provision was "clear and unambiguous," it constituted an enforceable release of any liability for negligence. Id., 73.

I find the reasoning employed by the Appellate Court in *B & D Associates, Inc.,* persuasive and would adopt it herein. In the present case, the release provided in relevant part that the plaintiff "agree[d] to hold harmless and indemnify [the defendant] . . . *for loss or damage, including any loss or injuries that result from damages related to the use of a snowtube or lift.*" (Emphasis added.) Moreover, the release provided that the plaintiff understood that "there are inherent and other risks involved in SNOWTUBING . . . and it is a dangerous activity/sport. These risks include . . . steepness and terrain . . . or natural or man made obstacles on and/or off chutes . . . . All of the inherent risks of SNOWTUBING present the risk of serious and/or fatal injury." Moreover, the document was entitled, "RELEASE FROM LIABILITY." Although the "fairest course"; *B & D Associates, Inc.* v. *Russell,* supra, 73 Conn. App. 72; would have been to include language specifically releasing any claim arising out of the defendant's own negligence, I conclude that the language in the present release was sufficient to inform the plaintiff that she was releasing any claim sounding in negligence against the defendant that might result from her use of the defendant's snowtubing facilities.

Moreover, other jurisdictions have upheld the use of exculpatory clauses notwithstanding the failure to mention negligence specifically. For instance, in *Heil Valley Ranch, Inc.* v. *Simkin,* 784 P.2d 781, 783 (Colo.

1989), the plaintiff was injured when the horse on which she was riding reared backwards and fell on top of her. Before riding the horse, however, the plaintiff had signed a release, stating that the "undersigned expressly assumes [the inherent] risk and waives any claim he [or] she might state against the stables as a result of physical injury incurred in said activities." Id., 782. Thereafter, the plaintiff brought an action against the defendant stable owner for negligence and breach of warranty. Id., 783. On the basis of the release, the defendant moved for summary judgment. The trial court in *Heil Valley Ranch, Inc.*, granted the defendant's motion for summary judgment, concluding that the language of the exculpatory clause in the release was clear and unambiguous and, therefore, shielded the defendant from liability. Id.

On appeal, the Colorado Supreme Court affirmed the grant of summary judgment, concluding that the specific term " 'negligence' " is "not invariably required for an exculpatory agreement to shield a party from claims based on negligence . . . ." Id., 785. Rather, "[t]he inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." Id. Under this inquiry, the court concluded that it was "reasonable to interpret the broad language in the release to cover claims based on negligence . . . ." Id. Moreover, the court noted, it would have been "unreasonable to interpret the agreement in a way that provides virtually no protection to [the defendant], and renders the release essentially meaningless." Id.; see also *Seigneur* v. *National Fitness*, 132 Md. App. 271, 280, 752 A.2d 631 (2000) ("[F]or an exculpatory clause to be valid, it need not contain or use the word negligence or any other magic words. . . . An exculpatory clause is sufficient to insulate the party from his or her own negligence as long as [its] language . . . clearly and specifically indi-

cates the intent to release the defendant from liability for personal injury caused by the defendant's negligence . . . ." [Citations omitted; internal quotation marks omitted.]).[3]

I find the reasoning of these cases persuasive and would adopt it in the present case. Thus, in my opinion, the intent of the parties to extinguish any liability arising out of the negligence of the defendant was clearly and unambiguously expressed. This is evident in the release signed by the plaintiff, which stated, among other things, that she was aware of the inherent risks presented by snowtubing and that she nonetheless agreed to "hold harmless and indemnify [the defendant] . . . for loss or damage . . . ." Because I conclude that the exculpatory clause contained in the release in the present case reasonably put the plaintiff on notice that she was waiving all claims sounding in negligence against the defendant, I would uphold the trial court's grant of summary judgment in favor of the defendant.

Moreover, as a matter of public policy, I believe that exculpatory clauses are appropriate in the context of recreational activities. Most, if not all, recreational activities are voluntary acts. Individuals participate in them for a variety of reasons, including to exercise, to experience a rush of adrenaline, and to engage their competitive nature. These activities, while surely increasing one's enjoyment of life, cannot be considered

---

[3] See also *Krazek* v. *Mountain River Tours, Inc.*, 884 F.2d 163, 166 (4th Cir. 1989) (declining to formulate rule that requires use of "magic words" such as negligence in releases arising out of certain recreational activities); *Reed* v. *University of North Dakota*, 589 N.W.2d 880, 887 (N.D. 1999) (concluding that release language, which stated that plaintiff "assume[d] all responsibilit[ies]" he may incur as direct or indirect result of participation in road race, "clearly and unambiguously evidences an intent to exonerate [defendant] from liability for the injuries" sustained by plaintiff); *Schutkowski* v. *Carey*, 725 P.2d 1057, 1061 (Wyo. 1986) (concluding that absence of word negligence is not fatal to exculpatory clause if terms of contract "clearly show intent to extinguish liability").

so essential as to override the ability of two parties to contract about the allocation of the risks involved in the provision of such activity. When deciding to engage in a recreational activity, participants have the ability to weigh their desire to participate against their willingness to sign a contract containing an exculpatory clause.[4] By articulating such a stringent standard, however, the majority makes it more difficult for those who sponsor certain recreational activities to allocate the risk involved in those activities.

Thus, because I believe that the release signed by the plaintiff in the present case reasonably put her on notice that she was waiving all claims sounding in negligence, I cannot agree with the majority opinion as set forth today. Accordingly, I respectfully dissent.

---

[4] This consideration is especially relevant to the facts of the present case. Unlike other activities that require the provision of a certain facility, snowtubing occurs regularly at locations all across the state, including parks, backyards and golf courses. Thus, while the contract was mass produced and designed to apply to thousands of customers, the parties were not in a bargaining position wherein the plaintiff had either to accept those terms or forgo the opportunity to snowtube. On the other hand, activities like parachuting require the provision of certain services or facilities, and thus the contract may need to be reviewed with greater scrutiny. Ultimately, however, given the voluntary nature of recreational activities, it is very difficult for a plaintiff to assert that a contract is one of adhesion, and thus in violation of public policy. See *Smith* v. *Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 353–55, 721 A.2d 1187 (1998) (contractual indemnity clause in preprinted lease contract not unconscionable); *Jones* v. *Dressel*, 623 P.2d 370, 374–75 (Colo. 1981) (preprinted contract used by skydiving company not contract of adhesion).