MICHELLE ROMAN *v.* CITY OF BRISTOL ET AL.
(AC 27013)

Schaller, Gruendel and Rogers, Js.

Argued December 7, 2006—officially released June 5, 2007

*Thomas R. Gerarde*, with whom, on the brief, were *Jay T. DonFrancisco* and *Jeffrey E. Potter*, for the appellants (defendants-third party plaintiffs).

*Heather J. Adams-Beman*, with whom, on the brief, was *Joel J. Rottner*, for the appellee (third party defendant).

*Opinion*

GRUENDEL, J. The principal issue in this appeal concerns the enforceability of a hold harmless clause in a lease for the use of a recreational and training facility operated by the defendants and third party plaintiffs, the city of Bristol and Tibor Flothman,[1] and leased to the third party defendant, Community Renewal Team, Inc., and the East Hartford Juvenile Justice Center.[2] On appeal, the third party plaintiffs claim that in rendering summary judgment in favor of the third party defendant, the trial court improperly (1) determined that the language in the parties' agreement did not require the third party defendant to hold harmless and indemnify them for any and all acts, (2) applied the law applicable to an exculpatory clause as opposed to an allocation of costs clause, (3) applied the standard set forth in *Hyson* v. *White Water Mountain Resorts of Connecticut, Inc.*, 265 Conn. 636, 829 A.2d 827 (2003), as opposed to that set forth in *B & D Associates, Inc.* v. *Russell*, 73 Conn. App. 66, 807 A.2d 1001 (2002), and (4) determined that there was no genuine issue of material fact that the third party defendant complied with its contractual obligations by providing a certificate of insurance. We agree with the third and fourth claims and accordingly reverse the judgment of the trial court.[3]

---

[1] Hereinafter, we refer to the city of Bristol and Tibor Flothman collectively as the third party plaintiffs.

[2] The East Hartford Juvenile Justice Center comprises one of the many programs that Community Renewal Team, Inc., administers. Therefore, we refer to both entities collectively as the third party defendant.

[3] We do not reach the first and second claims because our analysis of the third and fourth claims provides appropriate guidance to the court regarding the interpretation of the language of the agreement and the applicable law. The issues will be litigated further when the case is remanded.

The following facts and procedural history are relevant to our disposition of the third party plaintiffs' appeal. On June 27, 2003, the third party defendant signed a rental agreement that included the rental fee and the date and time for use of the Pine Lake Challenge Course (course), a recreational ropes course owned by and located in the city of Bristol.[4] In addition, the contract contained the following language:

"4. The Lessee agrees to provide the lessor with a Certificate of Insurance naming the City of Bristol as additional insured at least five (5) days prior to its use of the course facilities. It should reflect a minimum general liability of $1,000,000 (combined single limit) of bodily injury and property damage per occurrence and aggregate. The date(s) and raindate(s) of using the Challenge Course must be listed on the certificate. . . .

"5. It is agreed and understood that the City of Bristol, the lessor, and all Challenge Course instructors, shall be held harmless for any and all injuries and or personal loss sustained by members and/or guests of the lessee while on or using the property or equipment owned or rented by the lessor."

On July 2, 2003, Michelle Roman, the plaintiff and an employee of Community Renewal Team, Inc., was participating in an activity at the course, purportedly pursuant to the written rental agreement between the parties.[5] During the activity, she was to "ascend to an elevated platform and perform a free fall with a rope," but Flothman, a course instructor for the city of Bristol, failed to catch the rope and to break Roman's fall,

---

[4] The court found that the contract was executed by the third party defendant on July 2, 2003, the same date of the incident that led to this lawsuit. The contract, however, was issued by the city on June 9, 2003, and executed by the third party defendant on June 27, 2003.

[5] The agreement described the participants as twelve to sixteen year old children, and Roman was an adult employee of Community Renewal Team, Inc.

causing Roman to suffer substantial injuries. On January 16, 2004, Roman filed a three count complaint against the third party plaintiffs for injuries she allegedly sustained as a result of the accident.[6]

On May 21, 2004, the third party plaintiffs filed a motion to implead the third party defendant, and, on August 9, 2004, they filed a two count complaint against it for breach of contract and indemnification. The first count of the complaint alleged that the third party defendant breached the rental agreement by (1) not holding them harmless, (2) not providing them with a legal defense and (3) failing to secure and maintain an adequate and proper liability insurance policy. In the second count, the third party plaintiffs alleged that they were entitled to indemnification due to the breach of the agreement. On January 5, 2005, the third party defendant filed a motion for summary judgment, arguing that the indemnification provision in the rental agreement did not specify that Community Renewal Team, Inc., would be liable to the city of Bristol for the city's own negligence, and therefore the third party defendant was not obligated to hold the third party plaintiffs harmless and to provide them with indemnification. On January 19, 2005, the third party plaintiffs filed an objection, and a hearing was conducted on May 2, 2005. The court issued a memorandum of decision on August 30, 2005, granting the motion for summary judgment. This appeal followed.

As an initial matter, we set forth the applicable standard of review. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[6] The complaint originally was filed against the city of Bristol and "John Doe." Subsequently, Roman filed an amended complaint on October 14, 2004, in which Flothman was substituted for "John Doe."

judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Bebry* v. *Zanauskas,* 81 Conn. App. 586, 589, 841 A.2d 282 (2004). "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, *under applicable principles of substantive law,* entitle him to a judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; emphasis added; internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.,* 273 Conn. 448, 455–56, 870 A.2d 1048 (2005).

I

We first address the legal principles governing exculpatory clauses inserted into contracts. In *Hyson* v. *White Water Mountain Resorts of Connecticut Inc.,* supra, 265 Conn. 636, the plaintiff was injured while snowtubing at a facility in Middlefield known as Powder Ridge and, thereafter, filed a complaint against the defendant, White Water Mountain Resorts of Connecticut, Inc., alleging that the defendant's negligence proximately had caused her injuries. Id., 637–39. Prior to snowtubing at Powder Ridge, the plaintiff had signed an exculpatory agreement entitled "RELEASE FROM LIABILITY." Id., 637, 638 n.3. The issue presented in *Hyson* was whether the exculpatory agreement released the defendant from liability for its negligent conduct and, consequently, barred the plaintiff's negligence claims as a matter of law. Id., 640. Our Supreme Court concluded that it did not. Id.

After a detailed analysis of the agreement at issue and the interpretation of indemnification agreements in other jurisdictions, the court concluded that "a party cannot be released from liability for injuries resulting from its future negligence in the absence of language that expressly so provides. The release signed in [*Hyson*] illustrates the need for such a rule. A person of ordinary intelligence reasonably could believe that, by signing this release, he or she was releasing the defendant only from liability for damages caused by dangers inherent in the activity of snowtubing. A requirement of express language releasing the defendant from liability for its negligence prevents individuals from inadvertently relinquishing valuable legal rights. . . . Because the release signed by the plaintiff . . . did not *expressly* provide that, by signing it, she released the defendant from liability for damages resulting from its negligence, the trial court improperly granted the defendant's motion for summary judgment." (Emphasis added.) Id., 643–44.[7]

Less than one year prior to our Supreme Court's decision in *Hyson*, this court decided *B & D Associates, Inc.* v. *Russell*, supra, 73 Conn. App. 66, in which the

---

[7] About three months after the release of the memorandum of decision in the present case, our Supreme Court had the opportunity to decide an issue that it explicitly had left unresolved in *Hyson* v. *White Water Mountain Resorts of Connecticut, Inc.*, supra, 265 Conn. 636, namely, "whether the enforcement of a *well drafted* exculpatory agreement purporting to release a snowtube operator from prospective liability for personal injuries sustained as a result of the operator's negligent conduct violates public policy." (Emphasis added.) *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 326, 885 A.2d 734 (2005) (en banc). The court concluded that it did. Id., 335–36 ("the agreement in the present matter affects the public interest adversely and, therefore, is unenforceable because it violates public policy"). The *Hanks* decision has been instrumental in two recent Supreme Court cases. See *Brown* v. *Soh*, 280 Conn. 494, 909 A.2d 43 (2006) (exculpatory agreement signed by plaintiff as condition of employment violative of public policy); *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 905 A.2d 1156 (2006) (release signed by plaintiff prior to horseback riding lessons at defendant's equestrian facility invalid as matter of public policy).

plaintiff, a commercial tenant, brought an action sounding in negligence against the defendant landlord for losses the plaintiff had incurred as a result of a fire. Thereafter, the defendant moved for summary judgment, claiming that a provision in the parties' lease released him from all liability. Id., 68. The lease in that case provided that the tenant bore the risk of loss and would not hold the landlord liable for any damage or loss that occurred for any reason. Id., 68–69. After the trial court granted the defendant's motion for summary judgment on the basis of the release, the plaintiff appealed to this court, claiming that the lease provision did not release the defendant from liability stemming from his own negligence. Id., 70. Thereafter, this court determined that the lease provision released the defendant from liability for any negligence, explaining that "[t]he law does not favor contract provisions which relieve a person from his own negligence. . . . Such provisions, however, have been upheld under proper circumstances. . . . [T]he law's reluctance to enforce exculpatory provisions of this nature has resulted in the development of an exacting standard by which courts measure their validity. So, it has been repeatedly emphasized that unless the intention of the parties is expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts . . . . Put another way, it must appear plainly and precisely that the limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility . . . .

"When applied to contracts to which the parties are *sophisticated business entities*, the law, reflecting the economic realities, will recognize an agreement to relieve one party from the consequences of his negligence on the strength of a broadly worded clause framed in less precise language than would normally

be required, though even then it must evince the unmistakable intent of the parties . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 72–73, quoting *Gross* v. *Sweet*, 49 N.Y.2d 102, 107–108, 400 N.E.2d 306, 424 N.Y.S.2d 365 (1979).

Both cases offer examples of the validity or invalidity of exculpatory agreements. In *B & D Associates, Inc.*, this court stated that less precise language is required when one contracting party among "sophisticated business entities" seeks to relieve itself of its own negligence; id., 73; implicitly concluding that such an exculpatory clause could be valid. In *Hyson* and its later progeny; see footnote 7; our Supreme Court concluded that, in a recreational setting in which there is a distinct inequity in bargaining power between the parties, imprecise hold harmless language is fatal to the legal merit of the agreement, despite the parties' intent.[8]

The court in the present case stated: "The third party plaintiffs argue that because both parties are business entities, this court should follow the reasoning expressed in *B & D Associates, Inc.*; however, this argument fails to consider the more fundamental policy considerations inherent in arriving at that decision. While the third party defendant in the present case may be more akin to a sophisticated business entity than an individual, the agreement shares none of the characteristics of a commercial lease that is freely negotiated between two business entities for an extended period of time. The terms of the agreement were neither negotiated nor bargained for; rather, the agreement was a preprinted rental form that the city of Bristol drafted for use by its customers. Most importantly, the broadly worded language used in the hold harmless clause does

[8] Our Supreme Court in *Hyson*, in acknowledging this court's decision in *B & D Associates, Inc.*, declined to consider specific language requirements for the effective release of liability in commercial leases. See *Hyson* v. *White Water Mountain Resorts of Connecticut, Inc.*, supra, 265 Conn. 640 n.6.

not adequately put the third party defendant on notice that the third party plaintiffs were seeking to negate liability for their own acts of negligence. Based on these undisputed facts and absent a clear indication in the agreement that the third party defendant was releasing the third party plaintiffs from liability for their own negligence, this court follows the reasoning expressed in *Hyson*. . . . The agreement did not expressly state that the third party plaintiffs would be held harmless for their own acts of negligence and, therefore, the third party defendant had no contractual obligation to hold harmless the third party plaintiffs and was not obligated to provide indemnification." (Citation omitted.)

We decline to determine whether the agreement *expressly* stated that the third party plaintiffs would be held harmless for their own acts of negligence because we conclude that there exists a genuine issue of material fact regarding whether the parties are "sophisticated business entities," in which case such explicit language could be unnecessary. See *B & D Associates, Inc.* v. *Russell*, supra, 73 Conn. App. 73. The court found that the third party defendant "may be more akin to a sophisticated business entity than an individual," but attempted to distinguish *B & D Associates, Inc.*, by stating that "the agreement shares none of the characteristics of a commercial lease that is freely negotiated between two business entities for an extended period of time." We are not unmindful that the agreement in *B & D Associates, Inc.*, involved a commercial lease that likely was negotiated over an extended period of time; nevertheless, nothing in the case indicates that either of these factors is a prerequisite for a valid hold harmless agreement.[9] On the contrary, *B & D Associates, Inc.*, contains broad language that applies merely

[9] As the third party plaintiffs aptly point out in their brief, "[a]lthough the lease was for a term of one day, businesses often rent facilities and equipment for short time periods. For example, if a contractor rents a 100 ton crane for only one day to place a steeple on a church, the lease for the crane is clearly a commercial lease even though it is only for one day." As opposed

to "sophisticated business entities." The record reveals that the relative bargaining position of the parties was at issue in both parties' memoranda of law regarding the motion for summary judgment, and the issue was argued during the May 2, 2005 hearing. We conclude that a genuine issue of material fact existed regarding the relative bargaining position of the parties, the resolution of which would determine whether to apply *B & D Associates, Inc.*, or *Hyson* to the present case.

## II

The third party plaintiffs also assert that the court improperly determined that there was no genuine issue of material fact that the third party defendant complied with its contractual obligations under paragraph four of the agreement, which required that it provide a certificate of insurance at least five days prior to its use of the facility, naming the city of Bristol as an additional insured. We agree.

The court determined that a certificate of insurance naming the city as an additional insured had been obtained by the third party defendant. There appears to be no dispute that such a certificate had been obtained. Nevertheless, that does not end the inquiry. The agreement between the parties did not call simply for the issuance of a certificate of insurance. It also provided that the certificate "should reflect a minimum general liability of $1,000,000 (combined single limit) of bodily injury and property damage per occurrence and aggregate." In other words, the agreement called not only for a *certificate* of insurance but also for the protection provided by such a certificate.

to a release from liability that is signed by a participant in a recreational activity, akin to that signed in *Hyson*, the rental agreement in this case was signed days in advance. In addition, the requirement that the third party defendant provide the city of Bristol with a certificate of insurance "at least five (5) days prior to its use of the course facilities" further distinguishes this case from *Hyson*.

In the record before the trial court, however, were allegations that the insurance company that had issued the certificate of insurance had denied coverage on the claim.

The third party defendant argued as much in its brief in opposition to the third party plaintiffs' objection to summary judgment, noting that the third party defendant had initiated suit against the insurance company and invited the city to do so as well. In the face of this unresolved issue, we conclude that there was a question of material fact. Summary judgment was, therefore, inappropriate.

The judgment is reversed and the case is remanded with direction to deny the third party defendant's motion for summary judgment and for further proceedings in accordance with law.

In this opinion the other judges concurred.