ROGER J. CONWAY ET AL. *v.* AMERICAN
EXCAVATING, INC., ET AL.
(14525)

Landau, Hennessy and Shea, Js.

438

Argued December 1, 1995—officially released May 28, 1996

*Frank C. White, Jr.*, for the appellants (plaintiffs).

*Cornelius J. Ivers*, for the appellees (defendant Thomas J. Rowe et al.).

SHEA, J. The plaintiffs, Roger J. Conway and Robin Conway, have appealed from a judgment of the trial court in favor of the defendants, American Excavating,

Inc. (American), a Connecticut corporation; Robert Doolittle, its president; and the owners of two properties served by an easement providing access to a public highway for their benefit and that of the property owned by the plaintiffs.[1] The principal claim of the plaintiffs is that the court, in effect, ignored a provision of the easement and maintenance agreement, to which all the properties crossed by the easement were subject, requiring that the common roadway be restored to its original condition if it should be "disturbed or damaged." They also maintain that certain rulings on evidence were erroneous and that the court's finding of implied consent to a trespass on their property is unsupported by the evidence. We conclude that the judgment must be reversed in part.

There is no substantial dispute about the following facts. On April 19, 1991, American conveyed to the plaintiffs lot forty in a subdivision of four lots numbered thirty-seven, thirty-eight, thirty-nine and forty, situated on the south side of Maryland Drive, a public highway in the town of Middlefield. American had completed construction of a house on lot forty pursuant to a contract with the plaintiffs executed on October 10, 1990. All the lots are bounded on the north by Maryland Drive, but only lot thirty-seven, the lot farthest to the east of the four, had direct access thereto because the other three lots ascend very steeply to that highway. The four lots were subject to a "Declaration of Easements and Maintenance Agreement" that had been recorded in the Middlefield land records by one of American's predecessors in title who had created the subdivision. This document provided for a twenty foot wide easement over a strip of land extending from lot forty, the plaintiff's property, east to Maryland Drive and crossing sequentially lots thirty-nine, thirty-eight and a minuscule part

---

[1] All of the defendants failed to file briefs and to attend the oral argument of this appeal.

of lot thirty-seven, as shown on the recorded subdivision map. The easement was created for the benefit of lots thirty-eight, thirty-nine and forty to provide access to Maryland Drive. Ingress to or egress from those lots was expressly restricted to that easement. The owners of those lots were made responsible for all repairs, snow plowing and other maintenance of the easement, the expense to be shared equally.

The plaintiffs moved into their home in April, 1991, and the graveled roadway providing access to Maryland Drive was then satisfactory, being aligned in a straight line with the driveway leading to their garage and sloping moderately uphill to Maryland Drive. In August of that year, American began the construction of a house on lot thirty-eight for the defendants Michael Chappell and Joyce Chappell and lowered the surface of the roadway in front of their property slightly so that their driveway would be less steep. Although that change in the roadway resulted in some increase in its slope as it approached Maryland Drive, the plaintiffs raised no objection because the effect on their use of the roadway was not significant.

Some time prior to May, 1992, American began construction of a house on lot thirty-nine, lying between the plaintiffs' land and that of the Chappells, to be purchased by the defendants, Thomas Rowe and Robin Rowe. On May 22, 1992, the plaintiffs returned from a trip and discovered that the roadway, which was undisturbed at the time of their departure earlier that month, had been altered in several respects and that a portion of the driveway to their garage had been relocated in such a manner as to destroy part of their lawn.

The plaintiffs presented evidence to prove that the roadway, where it crossed lot thirty-nine, had been moved several feet northward toward the embankment rising to Maryland Drive and that its surface had been

lowered, apparently for the purpose of decreasing the slope of the driveway for the house being constructed on that lot. They claimed that the travel surface of the roadway had been narrowed and that its slope to Maryland Drive had become substantially steeper, thus creating problems of access to that highway. They presented photographs demonstrating problems they had encountered as a result of the reconstruction of the roadway, such as erosion of the embankment between the roadway and Maryland Drive, and the construction of an open ditch across the graveled surface of the roadway to drain water that accumulates along its north side, opposite the Rowes' house on lot thirty-nine. They claimed that the roadway no longer led straight into their garage, as it did formerly, and that part of their lawn had been destroyed when American changed the location of their driveway so that it would meet the relocated roadway.[2]

The defendant Doolittle, who was called as a witness by the plaintiffs, testified that, as president of American, he had instructed one of its employees to perform the work involved in relocating the driveway on the plaintiffs' property so that it would join the relocated roadway. He admitted that permission to enter their lot had never been requested. He also testified that American had performed the work necessary to relocate the roadway. He claimed, however, that the original location of the roadway that the plaintiffs had used for more than one year prior to May, 1992, was not within the easement area shown on the development map. He termed that roadway an "access road."

The trial court concluded that the plaintiffs had failed to sustain their burden of proving that the original loca-

---

[2] The trial court made no findings with respect to the factual claims of the plaintiffs recited in this paragraph. The defendants offered no evidence to dispute any of those claims.

tion of the roadway was within the easement area shown on the development map and that, therefore, they had no right to object to its relocation or to the other changes made by American in their absence. The court had excluded the testimony of a civil engineer offered by the plaintiffs, as well as the map he had helped to prepare in order to establish the location of the relocated roadway, for the reason that he was not a licensed land surveyor. The testimony of the registered land surveyor who had prepared the map, offered for the same purpose, was excluded because the plaintiffs had failed to identify him properly in accordance with Practice Book § 220 (D).

The plaintiffs claim that the trial court has ignored the import of paragraph three of the declaration of easements, which provides: "In the event said driveway has been constructed prior to the commencement of the construction of a dwelling by any party, and in the process of construction, the '20 [foot] driveway easement' is disturbed or damaged, the party owning the lot upon which such construction takes place shall restore the '20 [foot] driveway easement' to its condition as it existed immediately prior to the commencement of such construction." They claim that provision imposed on American the obligation of restoring the access roadway to the condition that existed prior to May, 1992, before American began the construction of a house on lot thirty-nine for the Rowes.

Although the memorandum of decision does not mention paragraph three, the court did indicate, in a colloquy with counsel during trial, that it interpreted that provision to be inapplicable to the roadway as originally constructed unless the plaintiffs first proved that it was within the area of the "20 [foot] driveway easement" as delineated on the subdivision map referred to in the declaration of easements. The court remarked further that the defendants American and Doolittle "could have

just staked out a twenty foot right-of-way and seeded it with grass, because there is nothing in the declarations that places any burden upon [them] to build any kind of a road surface."

In the memorandum of decision, the court held that the failure of the plaintiffs to sustain their burden of proving that the "access road" they had used prior to May, 1992, was located within the bounds of the easement shown on the subdivision map required a judgment for the defendants on the first four counts of the complaint seeking specific performance, a declaratory judgment, injunctive relief and damages for breach of warranty. The court also concluded that there was no evidence to support a claim for damages against the Rowes in the fifth count for obstructing the relocated roadway in July, 1992.[3] The plaintiffs effectively withdrew the seventh count by conceding at trial that no evidence had been presented on that count, which alleged a breach of the agreement for the purchase of lot forty and the house to be constructed thereon. On the sixth count alleging trespass, the court found "implied consent from the plaintiffs . . . for these defendants to have entered upon their property for the purpose of working on the right-of-way in connection with the development of abutting properties." The court also concluded that the plaintiffs had "failed to establish by a fair preponderance of the evidence damages suffered by them and had they prevailed on this count alone, their entitlement would merely have been nominal damages." With respect to the eighth count, alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., the court concluded simply that those "claims factually and legally are without merit."

---

[3] In this appeal, the plaintiffs have not contested the adverse judgment on their claim for damages against the Rowes in the fifth count of the complaint.

## I

Our principal disagreement with the trial court is with its disposition of the CUTPA count of the plaintiffs' complaint, which alleged a violation of General Statutes § 42-110b (a)[4] on the part of the defendants American and Doolittle by engaging in unfair or deceptive acts or practices in the conduct of a business. The specific unlawful acts upon which evidence was presented were the sale of lot forty to the plaintiffs without informing them of any intended changes in the location or grade of the access roadway, the relocation of the roadway by moving it closer to the embankment on the north side and rendering it more difficult to use, the failure to restore it to its original condition after completing construction of the house on lot thirty-nine for the Rowes, and the trespass on the plaintiffs' property while they were on vacation.

There is no evidence that the plaintiffs learned at any time before they returned from vacation in May, 1992, that any changes would be made in the location, grade, or width of the roadway they had used for more than one year for access to Maryland Drive. Without such notice, it would have been natural to assume that the obligation created by paragraph three of the declaration of easements, to restore the "20 [foot] driveway easement" after construction of other houses in the subdivision, applied to the existing roadway as it appeared when they bought their property. They had received a copy of the declaration at the transfer of title on their property. Even if that provision may properly be construed to refer only to the easement as shown on the subdivision map, its purpose cannot be negated simply by moving the existing roadway to correspond with the

---

[4] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

layout on the subdivision map, if that is what occurred, and by changing it in such a manner as to render it significantly inferior to the roadway the plaintiffs had been using. The remark of the trial court, that American and Doolittle "could have just staked out a twenty foot right-of-way and seeded it with grass," completely overlooks the nature of the transaction between the parties, the purchase of a completed house from those defendants that was at that time served by an adequate roadway for access to the public highway. Whether that roadway lay entirely within the bounds of the easement shown on the subdivision map, in the absence of notice to the plaintiffs that it would be changed, they had the right to assume that they would be served by a roadway as good as the one they saw when they bought their house.

The trial court failed to make any express determination of whether the changes made in the roadway by American and Doolittle, without notice to the plaintiffs of such a possibility at the time they purchased their property, constituted an "unfair or deceptive" act or practice in violation of § 42-110b (a). The court viewed the obligation of those defendants as limited to "[staking] out a twenty foot right-of-way and [seeding] it with grass . . . ." Such a narrow conception of the relationship between a real estate developer and a purchaser cannot be sustained in the light of the undisputed evidence in this case that the relocation of the roadway created problems for the plaintiffs that they had no reason to anticipate at the time of their purchase. Accordingly, the judgment on the CUTPA count of the complaint must be reversed.

The CUTPA count repeats essentially the allegations of trespass in the sixth count of the complaint by claiming that American and Doolittle entered "upon plaintiffs' property without plaintiffs' consent and disturbed and damaged the driveway by narrowing it, sloping it and

changing its location on plaintiffs' property, thereby reducing the use, enjoyment and value of plaintiffs' property." The trial court found implied consent to the entry because it "was within the comprehension of all the parties that the lots abutting the plaintiffs' lot forty would be developed and that some work would be necessary in connection with the right-of-way access driveway." That conclusion cannot stand because there is no evidence that the plaintiffs had any reason to believe that any work on the roadway in conjunction with the development of the other lots would involve a trespass on their property and it is undisputed that they had no notice that such a trespass would occur.

The plaintiffs, however, have not challenged the alternative determination of the trial court that they failed to prove any damages from the trespass and would have been entitled only to an award of nominal damages. The plaintiffs did present testimony that part of their lawn had been destroyed when the driveway to their garage was moved to join the relocated roadway and that it now contained a curve in order to provide access to the garage when it had previously been straight. No evidence of depreciation in the value of their property or other evidence that might have provided a basis for a monetary award was presented. We agree, therefore, with the alternative ground relied upon in disposing of the trespass claim in the sixth count of the complaint. See *Kelly* v. *Ivler*, 187 Conn. 31, 45–47, 450 A.2d 817 (1982). Although the court failed to make any award of nominal damages for the trespass, "[a]s a general rule, this court will not reverse and grant a new trial for the mere failure to award nominal damages." *Rubin* v. *Rios*, 186 Conn. 754, 756, 443 A.2d 1273 (1982).

Our agreement with the disposition of the trespass count does not dispose of the same claim in the CUTPA count of the complaint. Even without proof of actual damage from the unlawful entry, General Statutes § 42-

110g in subsections (a) and (d)[5] authorizes an award of punitive damages as well as attorneys' fees for a violation of § 42-110b. The plaintiffs, accordingly, would not be precluded from presenting evidence on that count sufficient to support an award of compensatory damages that they may have suffered at a new trial of the CUTPA count, which our reversal of the judgment on that count necessitates.

## II

Both of the rulings on evidence that the plaintiffs claim were incorrect relate to the admissibility of a map showing the relocated roadway in relation to the twenty foot easement shown on the subdivision map.

## A

The plaintiffs challenge the rulings of the trial court excluding certain testimony of a civil engineer relating to a map that he and a registered land surveyor had prepared. The engineer had assisted the surveyor, who worked as an independent contractor, in finding the deeds in the Middlefield land records and in obtaining

---

[5] General Statutes § 42-110g provides in relevant part: "(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper. . . .

"(d) In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. In a class action in which there is no monetary recovery, but other relief is granted on behalf of a class, the court may award, to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorneys' fees. In any action brought under this section, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief. . . ."

other information concerning the twenty foot easement shown on the subdivision map. He also acted as the surveyor's assistant in doing the field work for the survey at the site of the subdivision. The engineer testified that he always relied on surveyors for the existing condition of the land when doing engineering work, including the drawing of maps. He had received a degree in civil engineering and was a registered professional engineer. He had practiced civil engineering for twenty years and had experience in preparing maps for subdivision developments. When the plaintiffs offered the map in evidence, the court sustained an objection to its admission on the ground that the engineer was not a registered land surveyor in this state.[6]

"The true test of the admissibility of [expert] testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." *Taylor* v. *Monroe*, 43 Conn. 36, 44 (1875). Except in malpractice cases, it is not essential that an expert witness possess any particular credential, such as a license, in order to be qualified to testify, so long

---

[6] Before upholding the defendants' objection to the map on the ground that the plaintiffs' engineer was not a registered land surveyor, the trial court sustained a hearsay objection to its admissibility on the ground that the engineer had relied on the surveyor in preparing the map. When the plaintiffs inquired concerning the ground on which the court had sustained the objection, however, the court responded, "Insufficient foundation." The engineer then testified that he and the surveyor had gone to the land records office together and that both had participated in the survey of the property, the engineer acting as the surveyor's assistant. When the plaintiffs again offered the map in evidence, a voir dire was conducted, during which the engineer testified that he was not a registered land surveyor in this state. On the basis of that response, the defendants raised the objection that the court sustained.

as his education or experience indicate that he has knowledge on a relevant subject significantly greater than that of persons lacking such education or experience. "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury considering the issues." *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986).

The testimony of the plaintiffs' engineer concerning his education and experience, which was not controverted, indicates that he had a background in preparing maps "not common to the world." *Taylor* v. *Monroe*, supra, 43 Conn. 44. Certainly a map would have helped in understanding the issues in a case like this one. The fact that the engineer was not a licensed surveyor might properly have affected the weight of his testimony, but not its admissibility. *State* v. *Ortiz*, 198 Conn. 220, 228, 502 A.2d 400 (1985); *Oborski* v. *New Haven Gas Co.*, 151 Conn. 274, 280, 197 A.2d 73 (1964).

Although it is often said that the determination of the qualifications of an expert is largely a matter for the discretion of the trial court; *Oborski* v. *New Haven Gas Co.*, supra, 151 Conn. 280; *Coffin* v. *Laskau*, 89 Conn. 325, 329, 94 A. 370 (1915); we have never adopted the view of Professor Wigmore that such a ruling should be unreviewable.[7] *Wray* v. *Fairfield Amusement Co.*, 126 Conn. 221, 223–24, 10 A.2d 600 (1940). Nevertheless, "the exercise of this discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." *State* v. *Asherman*, 193 Conn. 695, 716, 478 A.2d 227 (1984), cert.

---

[7] Professor Wigmore states: "The experiential qualifications of a particular witness are invariably determined by the trial judge, and will not be reviewed on appeal." 2 J. Wigmore, Evidence (Chadbourn Rev. 1979) § 561.

denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *Siladi* v. *McNamara*, 164 Conn. 510, 513, 325 A.2d 277 (1973). In this case we conclude that the trial court clearly misconceived the law when it sustained the objection to the testimony of the plaintiffs' expert for the reason that he was not a registered land surveyor.

### B

On the day after the court had excluded the map offered by the plaintiffs through the testimony of their engineer, the plaintiffs brought in the registered land surveyor who had worked with the engineer in preparing the map. After he had testified to his qualifications as a registered land surveyor in Connecticut with thirty years experience in surveying, the defendants objected on the ground that his name had not been disclosed as an expert witness before trial pursuant to Practice Book § 220 (D).[8] The plaintiffs had filed a disclosure in accordance with the rule, in which they listed as their expert witnesses the name of their engineer and "staff." The surveyor testified that he had worked with the engineer for two and one-half years and had done all of the engineer's surveying work, but was not employed by him except on a job-by-job basis. The surveyor did not work in the same building as the engineer, who worked

---

[8] Practice Book § 220 (D) at the time of trial provided: "In addition to and notwithstanding the provisions of subsections (A), (B) and (C) of this section, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner within 120 days from the date the case is claimed to a trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

at his home. The court sustained the objection because the surveyor, not being an employee of the engineer, could not be regarded as a member of his staff, but was simply an outside expert whose identity should have been disclosed in accordance with the rule.

At the time of trial,[9] § 220 (D) required that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert . . . within 60 days from the date the case is claimed to a trial list. . . ." The rule further provided that "[i]f disclosure of the

[9] Practice Book § 220 (D) was amended in 1995 and now provides: "In addition to and notwithstanding the provisions of subsections (A), (B) and (C) of this rule, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the court determines that the late disclosure (i) will cause undue prejudice to the moving party; or (ii) will cause undue interference with the orderly progress of trial in the case; or (iii) involved bad faith delay of disclosure by the disclosing party. Once the substance of any opinion or opinions of an expert witness who is expected to testify at trial becomes available to the party expecting to call that expert witness, disclosure of expert witness information shall be made in a timely fashion in response to interrogatory requests pursuant to subsection (A) (1) of this rule, and shall be supplemented as required pursuant to Sec. 232. Any expert witness disclosed pursuant to this rule within six months of the trial date shall be made available for the taking of that expert's deposition within thirty days of the date of such disclosure. In response to any such expert disclosure, any other party may disclose the same categories of information with respect to expert witnesses previously disclosed or a new expert on the same categories of information who are expected to testify at trial on the subject for that party. Any such expert or experts shall similarly be made available for deposition within thirty days of their disclosure. Nothing contained in this rule shall preclude an agreement between the parties on disclosure dates which are part of a joint trial management order."

name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown." The plaintiffs must concede that their failure to "name" their surveyor as an expert in accordance with the rule was a deviation that required exclusion of his testimony "except in the discretion of the court for good cause shown." Practice Book § 220 (D).

The plaintiffs argue that the necessity for the surveyor's testimony did not arise until the court sustained the defendants' objection to the admissibility of the map on the ground that the engineer through whom it was offered was not a registered land surveyor, a ruling that this court has overturned. They also claim that the court failed to consider whether there was good cause for their noncompliance with § 220 (D). In *Roberto* v. *Honeywell, Inc.*, 33 Conn. App. 619, 625–26, 637 A.2d 405, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994), this court reversed a ruling that excluded testimony of an expert witness offered in rebuttal on the ground that the reasons given by the trial court did not relate to whether there was good cause for noncompliance with that rule. "The language of the rule . . . makes clear that the trial court is to exercise broad discretion in determining whether good cause exists in a given case." *Berry* v. *Loiseau*, 223 Conn. 786, 800, 614 A.2d 414 (1992).

In the present case, the trial court simply made a determination that, because the name of the surveyor had not been disclosed and he could not be regarded as a member of the engineer's staff, § 220 (D) prohibited him from testifying. There is no indication in the record that the court even considered whether there was good cause to excuse the violation of the rule. "[T]he scope of the trial court's discretion required it to review the

intent and the reasons given by the plaintiff for not disclosing her expert witness within the time frame set forth in § 220 (D), and to determine if those reasons, particular to this case, amounted to good legal excuse." *Roberto* v. *Honeywell, Inc.*, supra, 33 Conn. App. 626. Similarly, the trial court here failed to exercise its discretion to the extent required by the rule.

## C

It is evident that the exclusion of the map offered by the plaintiffs through the testimony of the engineer and the surveyor was prejudicial. The rulings excluding the testimony of those witnesses relating to the map made it impossible for the plaintiffs to prove their claim that the roadway they had used prior to May, 1992, lay within the easement area as shown on the subdivision map referred to in the declaration of easements. The provision of that declaration requiring restoration of the twenty foot driveway easement, if damaged or disturbed during construction of a dwelling on a subdivision lot, would plainly apply if that element of their burden of proof had been satisfied, as the trial court implicitly held.

In part I we concluded that a new trial is necessary on the CUTPA claim in the eighth count of the complaint for reasons not involving rulings on evidence. In that part we also expressed our agreement with the trial court's alternative ground for rendering judgment on the sixth count for the defendants, the failure of the plaintiffs to present evidence sufficient to support an award of damages for the trespass alleged. We have also mentioned previously the withdrawal of the seventh count at trial by virtue of the plaintiffs' concession that no evidence had been presented on that count. We now conclude that, because of the incorrect rulings relating to the exclusion from evidence of the map prepared by the plaintiffs' engineer and surveyor, a new

454

trial is necessary on the remaining counts of the complaint as well as on the CUTPA claim.

The judgment on the first (specific performance), second (declaratory judgment), third (injunction), fourth (warranty), fifth (damages) and eighth (CUTPA) counts is reversed except that the judgment for the Rowes on the claim of obstructing the roadway in the fifth count is affirmed; the judgment on the sixth (trespass) count is affirmed; the case is remanded for a new trial on the reversed counts.

In this opinion the other judges concurred.