JAMES E. SULLIVAN, ADMINISTRATOR (ESTATE OF JAMES P. SULLIVAN) *v.* METRO-NORTH COMMUTER RAILROAD COMPANY ET AL.
(AC 24895)

McLachlan, Harper and Berdon, Js.

Argued January 5—officially released August 1, 2006

*Joseph E. Dimyan*, with whom were *Michael P. Regan* and, on the brief, *John H. Van Lenten*, for the appellant (plaintiff).

*Robert C. E. Laney*, with whom were *Sarah F. DePanfilis*, certified legal intern, and, on the brief, *Charles A. Deluca* and *John Paul Marini*, certified legal intern, for the appellee (named defendant).

*Opinion*

HARPER, J. The plaintiff, James E. Sullivan, administrator of the estate of James P. Sullivan, the plaintiff's decedent (decedent), brought this wrongful death action against the defendant Metro-North Commuter Railroad Company,[1] alleging that the defendant was negligent in failing to maintain and to provide adequate security at one of its train stations. The jury returned a verdict in favor of the defendant, and the trial court rendered judgment in accordance with the verdict. The plaintiff appeals from the judgment, claiming that the court improperly (1) precluded expert testimony, (2) excluded relevant evidence and (3) instructed the jury on the superseding cause doctrine. We affirm the judgment of the trial court.

---

[1] The plaintiff's complaint also named the city of Norwalk, the redevelopment agency of the city of Norwalk and Ogden Allied Security Services, Inc., as defendants. Thereafter, summary judgment was rendered in favor of the city of Norwalk and the redevelopment agency of the city of Norwalk. The plaintiff withdrew the claims alleged against Ogden Allied Security Services, Inc. We therefore refer in this opinion to the Metro-North Commuter Railroad as the defendant.

The jury reasonably could have found the following facts. On the evening of August 29, 1992, the decedent was shot and killed by Larone Hines in a stairway leading up from Monroe Street to the westbound platform of the South Norwalk train station. The station is located in a relatively high crime area of Norwalk. The city of Norwalk owns the two railroad station buildings at the South Norwalk station, a parking lot and an underground tunnel connecting the railroad station buildings. The state owns the railroad platforms and stairways leading up to the platforms from Monroe Street, including the stairway where the incident took place. The department of transportation has a service agreement with the Metropolitan Transportation Authority, the parent organization of the defendant, and the defendant for commuter rail service in Connecticut. Since 1983, the defendant has provided this rail service and is responsible for its daily operations.

On the night of the incident, the decedent was a passenger on one of the defendant's trains from Westport to Norwalk. He arrived at the station at approximately 10:39 p.m. After frequenting a few establishments in Norwalk, the decedent had a brief encounter with Hines and a group of men outside a local nightclub on Monroe Street. The encounter became increasingly hostile. When the decedent walked away, Hines and the group of men followed him underneath a railroad trestle where they again exchanged angry words. The decedent ran from the group and made his way to the stairway underneath the trestle where a physical altercation ensued, and then Hines shot him.

The plaintiff filed a complaint alleging that the death of his decedent was a result of the defendant's failure to maintain and to provide adequate security at the station. The defendant raised several special defenses, including that the decedent's death was a result of the

"intentional and/or criminal actions of a third person" that superseded any possible negligence on the part of the defendant.

The jury returned a verdict finding that the decedent was an invitee of the defendant and that his death was not foreseeable to the defendant. The court rendered judgment in favor of the defendant in accordance with the verdict. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court abused its discretion when it precluded his premises security expert from testifying on the ground that he was not qualified to render expert testimony concerning the issues before the court. The defendant argues that the court did not abuse its discretion in precluding the plaintiff's expert because the witness had no experience, training or special knowledge related to railroad security systems. We agree that the court did not abuse its discretion.

Prior to trial, the plaintiff disclosed John W. Kennish as an expert witness in premises security. The plaintiff intended him to opine as to the standard of care for maintaining railroad security and deviation therefrom. The defendant filed a motion to preclude the testimony on the ground that Kennish was not qualified to provide an expert opinion on railroad security. After hearing argument as to the admissibility of the plaintiff's proffered expert witness, the court precluded his testimony on the basis of the following rationale: "Kennish had no railroad experience, no involvement in railroad security [and] was not a railroad expert, a railroad police procedure expert or a railroad police security expert. [He] had consulted no discernable data, could not explain or support his methodology and had no objective criteria to support his opinions. . . . Kennish did not rely on

any reliable studies, but used his personal experience, which, as stated, was not in the area of railroad security."[2]

"Our standard of review regarding a trial court's ruling on the admissibility of expert testimony is well settled. [W]e note that the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 514–15, 853 A.2d 460 (2004). As our Supreme Court recently articulated, "[e]xpert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 629, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005); see also Conn. Code Evid. § 7-2.

"The test for admissibility of the opinion of an expert witness is whether the expert knows the applicable standard of care and can evaluate the defendant's conduct, given that standard. . . . Even if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary error, there also must be harm." (Internal quotation marks omitted.) *Keeney* v. *Mystic Valley Hunt Club, Inc.*, 93 Conn. App. 368, 371, 889 A.2d 829 (2006).

Relying on that standard, the court precluded Kennish's testimony because it determined that he was not qualified as an expert in railroad security procedures. The court determined that Kennish's "opinions were

---

[2] The court provided this rationale in its articulation of October 8, 2004.

unsupported and unqualified and would not add to the jury's understanding of the case, and that he was not an expert in the field for which his testimony was offered." The plaintiff argues that the court applied the wrong standard to assess Kennish's qualifications and should have, instead, focused on whether his testimony would have been helpful to the jury by virtue of his special skill or knowledge. It appears, however, that the court did precisely that when it determined that Kennish lacked the necessary qualifications to render an expert opinion for which his testimony was offered. The question before the court was whether Kennish had expertise on which to base an expert opinion as to whether the defendant negligently failed to provide adequate security procedures at its railroad station. Kennish, although having experience as a police officer in various settings, with a premises security background, testified at his deposition that he had no experience, training or individual knowledge of railroad security. On the basis of that testimony, we cannot conclude that the court abused its discretion in precluding Kennish from testifying as to the appropriate standard of care for maintaining railroad security. It is not clear from his testimony that he knew the applicable standard of care or had the ability to evaluate the defendant's conduct. See *Keeney* v. *Mystic Valley Hunt Club, Inc.*, supra, 93 Conn. App. 373.

II

The plaintiff next claims that the court improperly excluded evidence of (1) a report prepared by a third party and (2) a video image of a camera atop a neighboring building. We disagree.

The standard of review of evidentiary rulings is well established. "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The

trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State v. Gonzalez*, 272 Conn. 515, 542, 864 A.2d 847 (2005). With that standard of review in mind, we turn to the plaintiff's two remaining evidentiary claims.

A

The plaintiff claims that the court abused its discretion when it excluded a report prepared by a third party on the ground that its contents were irrelevant due to its remoteness. We are not persuaded.

During the course of the trial, the plaintiff offered into evidence a report prepared by the St. Germain Group, Inc., of Boston, titled, "A Strategic Perspective on Policing the Long Island and Metro-North Railroads," for the Metropolitan Transportation Authority in 1988. Included in the report was a statistical breakdown of criminal activity at various stations throughout Connecticut operated by the defendant. The defendant objected to the report being placed in evidence. During trial and out of the presence of the jury, the court stated that it would not admit the report into evidence because it was irrelevant.

It is well established that "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such

a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worth or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not [unfairly] prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 200–201, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); see also Conn. Code Evid. § 4-1.

In the present case, the report was proffered to support the plaintiff's contention that the decedent's death was foreseeable to the defendant on the basis of its knowledge of the statistical data contained in the report concerning reported crimes at Connecticut stations. The report, however, was based on data compiled from the years 1985 through 1987. In addition, in regard to stations operated by the defendant in Connecticut, the report specifically states that "[w]hile the number of incidents reflects substantial police activities, on the basis of daily averages, the number of incidents is quite small, and as shown in Table 17 [which details reported crime per day], the amount of crime on the system is relatively low, especially given the number of passengers carried." Moreover, the report did not contain any discernable data specific to the station at issue in this case. We already have noted that the court has broad discretion in determining the relevance of the evidence. *Coughlin* v. *Anderson*, supra, 270 Conn. 514–15. On the basis of our review of the report, we cannot agree that the court abused its discretion when it excluded the report from evidence.

B

The plaintiff's final evidentiary claim is that the court abused its discretion when it excluded a video image of a camera atop a neighboring building. We disagree.

The plaintiff also sought to introduce into evidence a video image of a camera atop a building that abuts the station in order to show that the station was in a high crime area and that other property owners were taking additional security measures in the vicinity of the station. The defendant objected to the video image on the grounds of relevance and prejudice. After hearing arguments, outside the presence of the jury, the court sustained the objection.

As stated, "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *State v. Colon,* supra, 272 Conn. 200; see also Conn. Code Evid. § 4-1. We cannot agree with the plaintiff that a video image of a camera atop a neighboring building would have provided any assistance to the jury in determining whether the defendant had adequate security measures in place or to establish the standard of care for the defendant. The video image, therefore, was not relevant to the issues presented in this case. Moreover, as stressed by our Supreme Court, even if relevant, evidence may be excluded by the court if "its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time or needless presentation of cumulative evidence. Conn. Code Evid. § 4-3." (Internal quotation marks omitted.) *State v. Cortes,* 276 Conn. 241, 254, 885 A.2d 153 (2005). We conclude that the video image's potential for confusing the jury far outweighed its probative value, if any. The court properly excluded the video image.[3]

[3] The plaintiff urges this court to consider the "totality of the circumstances" analysis applied to determine foreseeability in premises liability claims as set forth by our Supreme Court in *Monk v. Temple George Associates, LLC,* 273 Conn. 108, 121, 869 A.2d 179 (2005), with regard to his appeal. *Monk's* holding does not change our analysis of the evidentiary issue before us. In *Monk,* our Supreme Court held that evidence concerning serious crimes in the vicinity of a defendant's premises, as well as security measures, either taken or not taken were factors to be considered in deciding foresee-

### III

The plaintiff's final claim on appeal is that the court improperly gave a jury instruction on superseding and intervening cause.[4] The defendant argues that the doctrine of superseding cause is still valid in Connecticut. This claim was properly preserved at trial for our review. We agree with the defendant.

At the conclusion of the trial, the court gave the following jury instruction relevant to this claim. "One of the defenses of the defendant is that even if you were to find it negligent, which negligence it denies, the actions of Larone Hines intervened to break the chain of causation between its alleged negligence and Mr. Sullivan's death. This is, after all, a corollary of the rule of law I have already given you that a defendant can only be found liable in negligence if its negligence

ability in premises liability cases. Id. As we concluded, in the present case, the court properly determined that a picture of a video camera atop a neighboring building is not relevant to either of those considerations.

Moreover, the plaintiff is appealing from evidentiary rulings that were based on lack of relevance. The court did not determine that serious crimes in the vicinity of the station were irrelevant to the issue of foreseeability. Rather, it excluded the proffered evidence because it determined that the video image of the camera was not relevant to establish such facts. We agree.

[4] The defendant suggests that this court should decline to review the plaintiff's claim because he failed to brief this issue properly. "Analysis, rather than abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004). We agree that the plaintiff did not set forth the standard of review and failed to provide the relevant portions of the court's charge. As we have oftentimes stated, however, our rules of practice "are a means to justice, and not an end in themselves; their purpose is to provide for a just determination of every proceeding." (Internal quotation marks omitted.) *Shapero* v. *Mercede*, 77 Conn. App. 497, 508 n.18, 827 A.2d 11, 823 A.2d 1263 (2003). Although the plaintiff's treatment of this claim in his principal brief is not in complete compliance with our rules of practice, the plaintiff has provided adequate analysis therein to which the defendant responded, and he submitted a reply brief that contains the standard of review and relevant portions of the charge. In consideration of those factors and because the record is adequate, we will review this claim.

was the proximate cause or a substantial factor in producing the plaintiff's injuries. Therefore, if you find that the actions of Mr. Hines intervened and superseded any negligence on the part of the defendant, then the defendant cannot be responsible to the plaintiff and your verdict must be for the defendant. If you find that Larone Hines' intentional acts were not within the scope of the risk which may have been created by the defendant's conduct, then the actions of Mr. Hines may be found by you to be the proximate cause of the plaintiff's injuries relieving the defendant of liability even if you find that the defendant was negligent and their negligence created a situation which afforded an opportunity to Mr. Hines to commit the crime."

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . .

"The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . The court should, however, submit to the jury the issues as outlined by the pleadings and as reasonably supported by the evidence." (Citations omitted; internal quotation marks

omitted.) *DiStefano* v. *Milardo*, 276 Conn. 416, 421, 886 A.2d 415 (2005).

In the present case, the plaintiff argues that the doctrine of superseding cause has been abolished in all civil cases as a consequence of *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 820 A.2d 258 (2003), and that, therefore, the jury instruction was improper. In response, the defendant contends that the application of the superseding cause doctrine in relation to unforeseeable acts of a third party is still valid. It is necessary for us, therefore, to first review the applicable law relating to the doctrine of superseding cause in order to decide this issue.

As we have stated, "[t]he terms intervening cause and superseding cause have been used interchangeably. . . . The Restatement of Torts makes clear that the doctrine is properly referred to as superseding cause, and that it embodies within it the concept of an intervening force. . . . A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about. . . .

"Regarding intervening cause, [our Supreme Court has] adopted the standard set forth in § 442B of [2 Restatement (Second), Torts (1965)], that [w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, *except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *B & D Associates, Inc.* v. *Russell*, 73 Conn. App. 66, 75–76, 807 A.2d 1001 (2002).

In *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 446, our Supreme Court did indeed determine that the doctrine of superseding cause was to be abandoned in favor of a proximate cause analysis *in some circumstances.* Id. As stated by the *Barry* court, "the rationale supporting the abandonment of the doctrine of superseding cause outweighs any of the doctrine's remaining usefulness in our modern system of torts. . . . [W]e believe that the instruction on a superseding cause complicates what is essentially a proximate cause analysis and risks jury confusion. The doctrine also no longer serves a useful purpose in our tort jurisprudence, especially considering our system of comparative negligence and apportionment, where defendants are responsible solely for their proportionate share of the injury suffered by the plaintiff." Id.

The *Barry* court did not, however, as the plaintiff suggests it did, abolish the doctrine of superseding cause in all civil cases. In fact, the court specifically stated the contrary. Id., 439 n.16. "Our conclusion that the doctrine of superseding cause no longer serves a useful purpose is limited to the situation in cases . . . wherein a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence. *Our conclusion does not necessarily affect those cases where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct.* See *Doe* v. *Manheimer,* 212 Conn. 748, 761, 563 A.2d 699 (1989) (concluding that criminal attack on plaintiff was superseding cause of plaintiff's injuries notwithstanding plaintiff's claim that defendant's allowed overgrowth of vegetation on property where attack occurred was substantial factor in both occurrence and duration of attack), overruled in part on other grounds, *Stewart* v. *Federated Dept. Stores, Inc.,* 234 Conn. 597, 608, 662 A.2d 753 (1995)." (Emphasis added.)

*Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439 n.16.

In the present case, the defendant is not seeking to apportion liability. Rather, it put forth as a special defense its theory that the criminal acts of a third party superseded any possible negligence on its part. On the basis of our review of the applicable law relating to the doctrine of superseding cause, we conclude that the instructions were correct in law, appropriately adapted to the issues and sufficient to guide the jury. See *DiStefano* v. *Milardo*, supra, 276 Conn. 421.

The judgment is affirmed.

In this opinion McLACHLAN, J., concurred.

BERDON, J., dissenting. I disagree with the majority's decision affirming the trial court's ruling precluding the expert testimony of John Kennish on the ground that he had no experience, training or special knowledge relating to railroad security systems.[1] It is correct that he had no such experience, but he was not offered for that purpose. Kennish was offered as an expert on premises security and did not require knowledge of or experience with the operation of a railroad. "An expert witness may be qualified to give an opinion on one subject, but not on another." C. Tait, Connecticut Evidence (3d Ed. 2001) § 7.6.1, p. 75 (Cum. Sup. 2006).

Premises security was relevant because there is no basic difference between security on the stairs of a

---

[1] The trial court makes it clear in its articulation that it focused solely on railroad expertise. "The court found that Mr. Kennish had no *railroad* experience, no involvement in *railroad* security; that he was not a *railroad* expert, a *railroad* police procedure expert or a *railroad* police security expert. The court further found that Mr. Kennish had consulted with no discernible data, could not explain or support his methodology and had no objective criteria to support his opinions. Mr. Kennish did not rely on any reliable studies, but used his personal experience, which as stated, was not in the area of *railroad* security." (Emphasis added.)

railroad from that of any other public stairway in a high crime area. "Except in malpractice cases, it is not essential that an expert witness possess any particular credential, such as a license, in order to be qualified to testify, so long as his education or experience indicate that he has knowledge on a relevant subject significantly greater than that of persons lacking such education or experience. Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury [in] considering the issues." (Internal quotation marks omitted.) *Conway* v. *American Excavating, Inc.*, 41 Conn. App. 437, 448–49, 676 A.2d 881 (1996), quoting *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986).

The plaintiff, James E. Sullivan, administrator of the estate of James P. Sullivan, represents that Kennish would have testified as to the lack of security at the location where the murder occurred and those measures that the defendant Metro-North Commuter Railroad Company could have and should have taken to protect the public and the victim.[2] The testimony was

---

[2] In the plaintiff's supplemental disclosure, he represented: "James W. Kennish is expected to testify as to the lack of security at the South Norwalk Train Station and those measures that the [d]efendant could have and should have taken to protect the public and the [p]laintiff in particular . . . consistent with his records, as to his evaluation of the South Norwalk Train Station, [its] general design, maintenance, lighting, upkeep, the relevancy of criminal activity in a general area and specifically at the train station, the overall safety afforded the public in general and, more specifically, to those individuals who avail themselves of the services offered by Metro North. He/she will further testify as to the overall lack of security at the South Norwalk Train Station, as to those measures which should have been taken to protect the deceased and furthermore an overall comparison of the train station and its lack of security versus security measures taken by others in the vicinity of the train station.

"James Kennish will testify as to his opinion of liability with regard to the incident which is the subject of this action. Additionally, he is expected to testify as to issues of liability and foreseeability.

"The basis for his opinions include his examination and evaluation of the incident location, police investigation records and reports, review of site

essential to the plaintiff's case as to whether the defendant was negligent with respect to the care that the plaintiff's decedent was due and whether the death of the decedent was foreseeable.

"The determination of the qualification of an expert is largely a matter for the discretion of the trial court. . . . The trial court's decision is not to be disturbed on appeal unless that discretion has been abused, or the error is clear and involves a misconception of the law." (Citations omitted; internal quotation marks omitted.) *Siladi* v. *McNamara*, 164 Conn. 510, 513, 325 A.2d 277 (1973). In the present case, however, the trial court both abused its discretion and misconceived the law.

II

I also disagree with respect to the court's instructing the jury on superseding and intervening causes. In *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 440, 820 A.2d 258 (2003), our Supreme Court concluded that the doctrine of superseding cause no longer serves a useful purpose in our jurisprudence when a defendant claims that a subsequent act by a third party cuts off his own liability for the plaintiff's injuries. The court went on to explain that superseding cause instructions serve to complicate what is fundamentally a proximate cause analysis. The court concluded that "because our statutes allow for apportionment among negligent defendants; see General Statutes § 52-572h; and because Connecticut is a comparative negligence jurisdiction; General Statutes § 52-572o; the simpler and less

plan, engineer designs of the station, locations of other stations, photographs and films already provided to the defendant through discovery as well as his education, training and experience.

"Mr. Kennish's opinion will be based upon his physical observations of the station and the surrounding area as well as various records and a review of various reports that are either public records or have been made available to him through the defendant, the City of Norwalk and other railroad stations."

confusing approach to cases . . . where the jury must determine which, among many, causes contributed to the plaintiffs' injury, is to couch the analysis in proximate cause rather than allowing the defendants to raise a defense of superseding cause." *Barry* v. *Quality Steel Products, Inc.*, supra, 436–39.

The Supreme Court, in footnote 16 in *Barry*, did limit its decision to situations "wherein a defendant claims that its tortious conduct is superseded by a subsequent negligent act or there are multiple acts of negligence." Id., 439 n.16. The court pointed out, however, that its decision "does not necessarily affect those cases where the defendant claims that an *unforeseeable* intentional tort, force of nature, or criminal event supersedes its tortious conduct," but left those situations to another day. (Emphasis added.) Id. Although in the present case, the intervening cause was a criminal act, it cannot be classified as unforeseeable because, as both parties point out, the shooting took place in a high crime area and should have been no surprise to the defendant. See, e.g., *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 662 A.2d 753 (1995).

In the present case, the defendant objected to the instruction both prior to and subsequent to the time it was given.

I respectfully dissent.